Thank you, your honors. My name is David Ness. I'm with the Federal Defender's Office of Montana, and I represent Jordan Martell. I don't think anybody would disagree that the government bears the burden of establishing each and every element, and that burden is beyond a reasonable doubt. And the primary issue in this case, it seems to me, is whether or not the government proved that my client, Jordan Martell, acted prior to the underlying crime being complete. The underlying crime, of course, being first-degree murder. Now, the evidence established, essentially, that there were a couple of fights here. During the course of the second fight, the victim had been hit over the head with a baseball bat on several occasions and had been hit with a chain and a lock enough times. And wasn't it true that there was evidence both ways in terms of the order of things so that the baseball bat could have been after the knife rather than before? I thought at least one person testified to a different sequence. I believe TM, who is Jordan's sister, her testimony of events, I think it's fair to say, she testified she didn't remember a whole lot. It was kind of confusing there. The government throughout the trial relied upon Mr. Martell's two statements, however. And rereading through their brief to this court, they relied upon Mr. Martell's two statements. And I think that the accepted chronology of events was that there was the first fight in which the victim got back into the car. He wasn't injured, at least not. He could still drink and party, so to speak. The second fight broke out, and that was when Mr. Bearcup got out of the car and started beating on the victim. And TM got out of the car, hit the victim over the head a couple of times with a baseball bat, and then after he fell down, he was beaten. Mr. Martell's statement was that essentially he got tired of hearing the victim being beat on by Mr. Bearcup and by his sister. But was it ever argued to the jury that he wasn't dead at the time? I don't think that that was ever distinctly argued. Are you arguing there's no evidence that Martell thought he was still alive when he gave the knife to Bearcup? There may have been some evidence that Martell thought he was alive, but, Your Honor, that's not the question. The question is, did they prove he was alive? Well, why can't the statement, after I see how beat up Red Dog was, I told Bearcup that we couldn't let him go. Isn't that an admission by the defendant that at that time he thought that Red Dog was still alive and should be killed with the knife that he was providing to Bearcup? Two things about that, Your Honor. I don't believe the evidence established that Mr. Martell even got out of the car during that second fight. Answer me the question that I asked. And so I'm saying I don't think when the term seen is used, I don't know that that's used necessarily in the way that I looked down and saw him. And there was no evidence that the victim was still alive. Could a reasonable juror take the statement that I have just cited as evidence that your client knew or thought that Red Dog was alive and had to be finished off with his knife? Given the other evidence in the case, Your Honor, no, I don't think so because Not given the other evidence. The question is, is there evidence a reasonable juror could take standing alone  Isn't that the evidence? You're reading the statement correctly. But what I'm saying is that I don't believe that the government proved beyond a reasonable doubt that this victim was alive. Well, Bearcup thought he had to stab him too, didn't he? Bearcup went at him. I think they said stabbed this person 20 times with the knife. And Bearcup winds up covered in blood. Interesting. And you think the jury from all that couldn't reach that conclusion? Actually, at one time, I think your client said the guy was standing up when he was being stabbed. But that's another question. Your client said lots of different things. And this was never put to the district court, was it? The argument that I'm making right now, I think it was raised somewhat tangentially in the Rule 29 motion filed afterwards, but certainly not the way I have. That motion said, well, it's not first-degree murder. It could be second-degree murder. It didn't really, never put it to the district court or the jury. I mean, nobody on the scene in this trial thought, oh, well, maybe he was really dead before this happened. I would have to concede trial counsel did not raise this directly, as I have. Yes, I will concede that. Or indirectly. Then with regard to the second issue, and that is whether or not the district court should have sua sponte ordered a mental health examination, Mr. Martel. Didn't the district court, the proposition that the defense counsel was making was that he wanted time not to investigate his competence, but to investigate his mental state at the time of the crime. And then the district court specifically asked him whether there was any problem with his competence to assist, and he said no. He didn't. So what evidence did he have that there was any problem with his competence? Well, the district court did have evidence put to it. It was in the hearing, I think, in which defense counsel asked for a continuance so that he could investigate the mental health issue. And the district court at that time heard evidence through defense investigator that that time. Yes, but what I'm saying is that he specifically asked that he didn't investigate. He said to the district, to the trial counsel at that hearing, do you have any reason to think he's not competent to participate in his defense? And the defense counsel said no. So I understand that he has an independent responsibility to investigate, but essentially he did investigate. He asked that the person who had been dealing with him whether there was any problem, and he said no. But there was other evidence during that hearing as well, evidence bearing upon Mr. Martel's ability to assist defense counsel because his memory was so bad. The defense investigator, for instance, testified about the severe head injury that he had and that both his sister and his father had told the investigator that Mr. Martel had a faulty memory to the point where he needed a payee for his disability payments because his memory was so poor that he couldn't handle his own disability payments, and so his mother was designated as a payee. In fact, didn't the prosecutor raise the question and say, well, maybe you ought to worry about this, and the defense counsel said no problem, but we'll be looking into it, we'll be checking into it, and they never came back and said, you know, Judge, we're having trouble with this guy. He never did, and the prosecutor who is here, I think, rightly characterizes his position in his brief where he says, well, Judge, this has been raised so we have no objection to a continuance motion. And they didn't want a continuance motion for that purpose, did they? They didn't need a continuance for that purpose, did they? For the competency issue? They didn't say, yes, we'd better do that, Judge, and make sure this guy can assist us. And there was nothing the judge could see that indicated this guy was incapable of assistance at the time. He wasn't acting out in court. He wasn't doing some of the strange things we've seen in other cases. No, he wasn't that, with the exception of this evidence coming in about his faulty memory, that's together with the two statements. The weird thing is that there's this, what's probably a misstatement in the transcript where he says, no, there's no problem, he's been extremely quiet. It seems unlikely that he actually said quiet. And I agree. I read that and I took a double take. I wasn't there. I don't know what was said, so. It just wasn't a non sequitur, the way it was written. Right, right. With that, thank you. Thank you. Good morning. My name is Joe Thagard. I'm an assistant United States attorney from Helena, Montana. I was the prosecutor in this matter. With respect to the first issue, the sufficiency of the evidence, I think that this case at bottom turns on this statement given by Mr. Martel, in which he did say, you know, I seen how he looked and knew we couldn't let him go. And I think that a reasonable juror relying on that. Mr. Thagard, you've proposed an instruction to the court which allowed the jury to find either that the defendant killed Red Dog or aided and assisted in killing Red Dog. That's correct, Your Honor. What's the evidence that he killed Red Dog? Well, Your Honor, I think that if you're going to go, if you're going to sustain this conviction, it has to be on an aiding and abetting theory. Right. So it was really error to instruct the jury that they could find that the defendant killed Red Dog. The question I have in mind is how do we know the jury made a correct decision in their verdict? It wasn't a special verdict. How do we know that the jury didn't find incorrectly without any evidence to support the instruction that the victim was killed by the defendant? Well, the jury that was instructed, though, that they had to have a unanimous verdict. Well, it could be unanimously wrong given that it was misled by the instruction. Well, they still had to evaluate that instruction in light of the facts of the case. I guess the question I have is this. Does the error in instruction, which I think is an error because there was no evidence to support that direct liability, does that taint the verdict as to aiding and abetting? I don't believe it does, Your Honor. I think that the evidence, frankly, is overwhelming. He participated, Mr. Martel participated in the first beating. He participated in driving out there with his victim. He gave this knife to Mr. Barakob and said, I can't let him go. Thereafter, he participated in the concealment phase of the crime. Did the jury? And he direct he started the thing in the first place. Absolutely, he started the thing.  Yes, Your Honor. Was the jury told that the victim had to be dead first? I couldn't be dead before the stabbing? The jury was told in the aiding and abetting instruction, Your Honor, that the defendant had to act before the crime was completed. And I think... But were they told what the crime was completed meant, i.e., that it didn't involve the post-death? They weren't told that specifically, Your Honor. However, I certainly think that, at least as I construe it, and I'm not the juror or the court for that matter, I think that when you're told that a crime has to be completed, particularly murder, that that would, you know, somebody would infer pretty reasonably from that that that was... Well, actually, I suppose a layperson could well think that putting him in the back of the car and throwing him over into the river and all that was all part of the crime. Well, but, you know, I think that ultimately, though, the completion of a murder, you know, somebody's got to be dead for a murder to be complete. Otherwise, you may have an attempted murder, but the death is sort of... No, it's the complication of the aiding and abetting and the murder, that as to what the... when the crime is over. Yes, he has to be dead, but when's the crime finished? Yes. That's the question. Yes, and that's my position, simply that, you know, you do have to be dead before the crime is completed. I'll move on to the second issue, and I'll just address that very briefly. During the hearing before Judge Haddon, it was on the issue of essentially getting a continuance in order to obtain medical records to verify that this man had some sort of a psychological condition. I think that the record is clear that that hearing was really aimed at an insanity defense. My comment was certainly aimed at my concern that I felt that he should have the time necessary to develop this defense. But the judge did ask at that hearing about competence. He did. He did. And then we have this strange response, which was, everything's fine, he's extremely quiet. And I guess that's the only thing I can say, too, is it is a strange response. Well, it may not be strange, because a lot of times one of the problems is these people are zigzaggy. They're screaming and yelling at counsel. They're carrying on in court. They're not calm and quiet. They're madmen. And we see that in the records a lot. We see those arguments made all the time. So maybe counsel is just saying, he's not doing anything crazy, Judge. Well, and there certainly wasn't anything from his demeanor that indicated that. And I would point out that during the hearing where he subsequently attempted to change plea, and I can't actually remember if that proceeded or was after the hearing and the motion to continue, but he stated that he... It was after, because I think it was during the trial or right before the trial. Well, there were actually two, Your Honor. In one change of plea hearing, he actually got to the point where the court asked him, do you want to go ahead and provide a factual basis? I didn't mean that one. Yeah, he thought about it for a prolonged period of time. It's not really reflected in the record, but it wasn't a matter of seconds that passed and said no. And so certainly his demeanor seemed to be suggesting that there was nothing about this person that would indicate he was incompetent. And so I just don't think that there was any sort of a substantial basis that would require the district court to order a competency. Plus the statements to the police certainly suggested that he... Absolutely. And there may have been some inconsistencies in that statement, but he addressed them in the second statement and said, I lied because I didn't want to be charged with murder. That seems like sort of a pretty good standard for assessing the rationalities. Counsel, I have a question regarding evidentiary errors. Trista Martel was asked why she hit Red Dog with a baseball bat, and you objected on the grounds it was outside the scope. Yes. And it was sustained. But it wasn't outside the scope. Let's suppose that it shows the circumstances under which she hit Red Dog, and suppose that the answer of that would have shown that there was a provocation by Red Dog as to her and her unborn child. Wouldn't that produce the mental element of premeditation and intentional killing to something slighter, for instance manslaughter? You know, Your Honor, I don't know that it would, certainly in the case of Jordan Martel. Maybe if we were before you on Ms. Martel's case, that might be another matter. But with respect to Jordan Martel, he'd had this sort of animosity going back a little while with Bear Cub for whatever reason. I think he gave a couple explanations. Well, Jordan Martel is only vicariously liable through aiding and abetting. So if the mental element of the homicide was that of Trista Martel, if she hit him with a baseball bat in the head, for instance, if that mens rea were reduced from premeditation and deliberation, then he would be aiding and abetting a manslaughter, not a first-degree murder. Well, I think in this instance that there are two issues. One, of course, is that we also have to factor Jitway Bear Cub into this whole factor and what his mens rea was with respect to the victim as well. And I think that that's really the critical issue there. He's the one who has the knife. Yes, Your Honor. I have no other comments unless the panel has further questions. Thank you very much. Thank you. Counsel? A minute or so for rebuttal. I guess just real quickly, I think one of the problems with this case, particularly with respect to the first issue that I've raised, is the instruction it has to do with aiding and abetting. And it says that the defendant had to act before the crime was completed, but the jury never was really instructed what act we're talking about or what the defendant had to do and where within the chronology of this thing that Mr. Martel had to act. And for that reason, I don't think that one can say that the jury necessarily found that the act we're talking about here is Mr. Martel handing Mr. Bear Cub the knife. The jury could have been all over the board on that. The problems are that the instruction wasn't objected to. And I gather the issue wasn't raised before in closing argument. It just wasn't an issue. I mean, I gather it was sort of common ground between everybody in that courtroom that he wasn't dead yet. And to start raising the issue now when there was really no controversy about it. I mean, the reason it wasn't paid more attention to was because there was really no controversy about it. Well, even if the court reviews this on plain error, I believe what the case law says is that convicting someone of a crime they didn't commit is plain error. Are you suggesting that in every murder case, there must be a further instruction that says, And remember, jurors, you must find that he wasn't dead at the time he was stabbed. No. No, no, no. No, I mean, every case is different. So no, I would not say every single murder case. So this is a murder case where nobody raises the issue. It's just a typical murder case. And in hindsight on appeal, the argument is, oh, well, the jury should have been instructed about whether he was dead before he was stabbed. That doesn't make too much structural sense. Well, the issue I've raised is that the government's proof failed to establish that. I understand. That's my understanding. Okay. Thank you very much. Thank you, counsel. The case of United States v. Marchall is submitted. I'm going to go on to United States v. Juvenile Female.
judges: Fernandez, Berzon, Bea